IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ALFAR KYNWULF,

    Plaintiff,       Case No. 2:09-cv-418

v.             Judge Frost

ROBERT WARTH,        Magistrate Judge Abel

    Defendant.

**OPINION AND ORDER**

This matter is before the Court pursuant to Defendant's Motion for Summary Judgment. (Doc. # 10.) At the same time as his motion for summary judgment, Defendant filed a motion to stay discovery and further motions practice pending a ruling on summary judgment. (Doc. # 11.) Plaintiff moved for additional time to respond to summary judgment. (Doc. # 12.) The Court granted Plaintiff an extension and ordered a stay of discovery. (Doc. # 14.) However, Plaintiff did not file a memorandum in opposition to Defendant's motion for summary judgment.

**I. Background**

Plaintiff was formerly a prisoner at the Ross Correctional Institution.[1] At all relevant times, he was a plaintiff in class action litigation pending before this court concerning accommodations for his religion, Asatru. On November 21, 2008, Plaintiff was scheduled to participate in a 1:30 p.m. telephone conference call with his attorney. (Doc. # 4, at 2-3.)

---

[1] At the time of the events in question, Plaintiff was named Darryl Blankenship, and Defendant refers to him by this name throughout his motion for summary judgment. Plaintiff has, however, brought this action under the name Alfar Kynwulf.

1

According to Plaintiff's Complaint, he appeared at the Parole Board room at the appropriate time to take his telephone call and was confronted by Defendant, Robert Warth, a corrections officer.[2] Defendant belligerently demanded to know the reason for the telephone call and demanded to see the legal documents that Plaintiff had brought with him. Then, stating that Plaintiff's documents about the Asatru accommodations litigation related to an "unauthorized group," Defendant refused to permit Plaintiff to take his telephone call. Plaintiff contacted the Captain's Office, which provided him with an escort. He was then permitted to take his call. (*Id.*)

Plaintiff alleges that Defendant became angry that Plaintiff had gone over his head to gain access to the telephone call and that Defendant retaliated by issuing a conduct report against Plaintiff for disobeying orders and possessing prohibited documents. (*Id.* at 4.) Plaintiff claims that Defendant's actions in preventing him from taking his attorney phone call and in submitting the conduct report constitute unconstitutional acts of retaliation for seeking access to the court system and for protesting mistreatment, as well as constituting a deprivation of his civil rights on the basis of his religious preferences. He seeks a declaratory judgment that Defendant's actions violated his First, Eighth, and Fourteenth Amendment rights, and an award of compensatory and punitive damages.

Defendant's motion for summary judgment was accompanied by an unsworn declaration under penalty of perjury. In it, he stated that Plaintiff had come into the visiting area at Ross Correctional Institution on the date in question, claiming that he "was there to attend an attorney visit." Defendant assumed that Plaintiff meant an in-person conference, not a telephone call,

---

[2] Plaintiff verified his complaint with an unsworn declaration under penalty of perjury. (Doc. # 4, at 6.)

because a telephone conference room had not been set up and he had received no paperwork about an attorney meeting. Prison protocols did not permit inmates to bring documents with them into the visiting area unless the search officer had received a special communication permitting such documents; Defendant had received none. Defendant accordingly demanded to see the documents Plaintiff had brought with him and then told Plaintiff that Plaintiff could not take the documents into the visiting room. Plaintiff became upset at this and left. Defendant stated that "Blankenship's act of refusing to show me his paper or leave it outside the visiting area, and his act of disrespecting me and walking away from our discussion constituted rule infractions." (Doc. # 10-1, at 3.)

      Defendant acknowledged that Plaintiff then returned with an escort from the Captain's Office, and that Plaintiff then conducted his phone conference. Defendant stated that, at the direction of the Acting Captain, he wrote an incident report and conduct report about his confrontation with Plaintiff: "I therefore wrote Blankenship a conduct report for disobedience of a direct order in violation of Rule 21 for refusing to show me the document in his possession when I asked to see it, or else to leave it outside the visiting area." (*Id*. at 4.) The accounts of Plaintiff and Defendant concerning the encounter differ as to Defendant's actions, although Plaintiff's account does not deny his own actions that Defendant cites in his declaration and in his incident report (Doc. # 10-1, at 6.) On November 24, 2008, a hearing was held on the conduct report, at which Plaintiff was found not guilty. (*Id*. at 9-13.) The report was expunged from his record, and Plaintiff received no punishment. (*Id*. at 4.)

## II. Discussion

### A. Standard involved

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A.*, 12 F.3d 1382, 1388-89 (6th Cir. 1993). To avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *accord Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (concluding that the court must draw all reasonable inferences in favor of the nonmoving party and must refrain from making credibility determinations or weighing evidence). In responding to a motion for summary judgment, however, the nonmoving party "may not rely merely on allegations or denials in its own pleading; rather, its response must–by affidavits or as otherwise provided . . . –set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2);

*see Celotex*, 477 U.S. at 324. Furthermore, the existence of a mere scintilla of evidence in support of the nonmoving party's position will not be sufficient; there must be evidence on which a jury reasonably could find for the nonmoving party. *Anderson*, 477 U.S. at 251; *see Matsushita*, 475 U.S. at 587-88 (finding reliance upon mere allegations, conjecture, or implausible inferences to be insufficient to survive summary judgment).

Where, as here, a party fails to respond to a motion for summary judgment, a court's reliance on the facts offered by the movant is proper and sufficient. The facts presented and designated by the moving party become the facts at hand to be dealt with by the trial court; the Court is not obligated to search the record *sua sponte* for more. *Guarino v. Brookfield Twp. Tr.*, 980 F.2d 399, 404 (6th Cir. 1992).

**B. Analysis**

Plaintiff summarizes his claim as follows:

> The acts of Defendant R. Warth, in being derogatory to Plaintiff for seeking access to the Court and for his religious preference with threatening and derogatory remarks, in refusing to permit the attorney telephone conference call, and for attempting to have Plaintiff unlawfully and inappropriately punished for having secured the phone call after his attempts to prohibit same, constitute acts of retaliation for seeking access to the court and / or for religious preference and for having been successful in complaining to his supervisors of his conduct . . . . The actions taken against Plaintiff by Defendant were a direct result of Plaintiffs['] legal activities and religious preference and for having complained to Defendants['] superiors of his conduct which resulted in being allowed the attorney phone call after Defendant prohibited same, all constitutionally protected conduct.

(Doc. # 4, at 4.)

A claim of "retaliation" can arise in various statutory contexts. One of these, courts have recognized, is an action under 42 U.S.C. § 1983 claiming that government officials retaliated

5

against a plaintiff prisoner for exercising a constitutional right.[3] *Thaddeus-X v. Blatter*, 175 F.3d 378, 386 (6th Cir. 1999). In order to bring a claim for retaliation, a plaintiff must show that he engaged in conduct protected by the Constitution or by statute, that the defendant took an adverse action against the plaintiff, and that this adverse action was motivated, at least in part, by the protected conduct. *Id*. at 386-87. If the plaintiff establishes the three elements of a retaliation claim, the burden of production then shifts to the defendants to show that their actions would not have been different absent the plaintiff's protected conduct. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977).

The first element of a claim for retaliation is clearly met here. Participation in a class action lawsuit to challenge prison conditions is constitutionally protected activity. *King v. Zamiara*, 150 F. App'x 485, 492 (6th Cir. 2005). However, the second element requires a finding of an "adverse action." In order to form the basis of a claim, such action must be one "that would deter a person of ordinary firmness from continuing to engage in that conduct." *Thaddeus-X*, 175 F.3d at 394. Moreover, the *Thaddeus-X* court recognized that "[t]here is, of course, a *de minimis* level of imposition with which the Constitution is not concerned." *Id*. at 396 (quoting *Ingraham v. Wright*, 430 U.S. 651, 674 (1977)).

Defendant's confrontation with Plaintiff clearly did not itself have the effect of deterring Plaintiff from continuing with his telephone call:

> Upon returning to his housing unit, Plaintiff Kynwulf had his unit Officer telephone the Captain's Office . . . . The Captain's Office advised Plaintiff Kynwulf to appear at the Captain's Office and that someone from the Captain's

---

[3] Plaintiff cites to 18 U.S.C § 242, which establishes the federal *crime* of deprivation of rights under color of law. Likewise, he cites to Ohio Revised Code § 2921.45, which establishes a similar state crime. The Court will presume that Plaintiff meant to bring an action under 42 U.S.C. § 1983, which provides for a civil action.

6

> Office would personally escort Plaintiff to his attorney call.
>
> Plaintiff Kynwulf appeared at the Captain's Office at which time he and his legal documents were escorted to the attorney conference call and the call was permitted to take place.

(Doc. # 4, at 3-4.) The delay, whether occasioned by a misunderstanding or by Defendant's intention to frustrate Plaintiff, had no deterrent effect; Plaintiff received his phone conference. By Plaintiff's own account, he went through the appropriate channels and received redress. Any inconvenience he suffered was *de minimis*, and the necessity of obtaining a superior's intervention to overcome what amounts to a bureaucratic obstacle cannot be found to rise to a violation of constitutional rights. There remains, however, the question of whether Defendant's conduct report following Plaintiff's phone conference was an adverse action.

In *Johnson v. Merrill*, 187 F.3d 636, 1999 WL 164912 (6th Cir. 1999) (unpublished table decision), the Sixth Circuit Court of Appeals addressed a claim that prison officials had retaliated against a prisoner for bringing litigation. The *Johnson* court held:

> In addition, the record reveals that Johnson continues to file grievances and litigate this and other cases. Thus, she does not show that she has been prevented from engaging in the constitutionally protected conduct that allegedly prompted the retaliatory actions at issue. Therefore, the defendants met their burden of showing that their conduct did not cause Johnson to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in seeking access to the courts.

*Id.* at *2 (citation omitted to *A.C.L.U. of Maryland v. Wicomico County, Md.*, 999 F.2d 780, 785 (4th Cir. 1993)).

The docket in *Miller v. Wilkinson*, Southern District of Ohio Case No. 2:98-cv-275, indicates that Plaintiff was not deterred by Defendant's conduct report from continuing to exercise his right to litigate in that case. The day after his successful disciplinary hearing,

Plaintiff filed a motion to compel. (Miller Doc. # 432.) He continued to litigate vigorously thereafter. *See* Miller Docs. # 440, 454, 461, 466, 467. Furthermore, Plaintiff continued to participate in other litigation pending before this Court. *See, e.g., Eberle v. Wilkinson*, Case No. 2:03-cv-272; *Ratcliff v. Moore*, Case No. 1:05-cv-582.

Where there is no indication that Plaintiff was deterred at all by the conduct report from continuing to engage in protected conduct, and Plaintiff suffered no other adverse consequences from the report, Plaintiff cannot demonstrate an "adverse action" against him sufficient to support a retaliation claim. The Court does not find that bringing conduct charges against Plaintiff was a *de minimis* imposition. However, the apparently undisputed nature of Plaintiff's conduct toward Defendant and Plaintiff's subsequent acquittal of the disobedience charge show that the conduct report cannot reasonably support a claim that he was subjected to an adverse action because of engaging in protected conduct. Because Plaintiff cannot meet this element of a retaliation claim, Defendant is entitled to summary judgment on Plaintiff's claim of retaliation.

### III. Conclusion

For the reasons set forth above, the Court **GRANTS** Defendant's Motion for Summary Judgment. (Doc. # 10.) The Clerk shall enter judgment accordingly and terminate this case upon the docket records of the United States District Court for the Southern District of Ohio, Eastern Division, at Columbus.

**IT IS SO ORDERED**.

    /s/ Gregory L. Frost  
GREGORY L. FROST  
UNITED STATES DISTRICT JUDGE